**E-FILED**
Thursday, 07 June, 2007  10:46:43 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**



**FILED**

JUN - 7 2007

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| **PLAINTIFF** | § | |
| | § | |
| **v.** | § | **1:06-cr-10060-MMM-JAG-1** |
| | § | |
| **GAYLAND C. SANDERS** | § | |
| **DEFENDANT** | § | **VERIFIED AND IN** |
| | § | **AFFIDAVIT FORM** |

© 2006, 2007

## MOTION TO DISMISS INDICTMENT FOR
## LACK OF DISTRICT COURT'S JURISDICTION

Come now, Defendant, Gayland C. Sanders, pro se, and moves the District Court

to dismiss his indictment for lack of subject matter jurisdiction.  Since the actions of the

court are, by definition, ***ultra vires***, the district court can not proceed with actions related

to this case, can not accept a plea agreement, and must dismiss the indictment against

Defendant as a matter of law.

Defendant will show the district court that the act by which the district court

obtains its jurisdiction to indict and prosecute Defendant, 18 USC § 3231, a part of Title

18 of the Criminal Code, was never passed into law by the 80th Congress of the United

States, as the bill signed by the Speaker of the House, the President of the Senate, and the

President of the United States, is ***textually different*** than the bill "passed" by Congress.

Without authority to prosecute pursuant to 18 USC § 3231, the court has no authority to

proceed with this case and must dismiss.

Furthermore, the court can not obtain its jurisdiction pursuant to the prior act, 18

USC § 546 (1940), as that act only allowed the prosecution of crimes ***defined by that act***.

See 18 USC § 546 (1940).  None of the crimes charged in Defendant's indictment were

1

part of that act. Moreover, the crimes charged in that act carried ***different penalty provisions*** than the crimes in the 1948 act. Without Fair Warning as to the crimes charged in Defendant's indictment, any attempted prosecution would be a further Due Process violation.

Defendant requests full discovery and an evidentiary hearing on his motion.

**History of Case**

Defendant was indicted on July 19, 2006, charged with violations of 21 USC § 841 B, possession with intent to distribute 5 grams or more of crack cocaine, in violation of 21 USC §§ 841(a)(1) & (b)(1)(B)( the statute was enacted in 1970). (Doc # 1).

Defendant entered a plea agreement at a change of plea hearing on February 23, 2007.

On March 26, 2007, Defendant filed a motion to withdraw his plea of guilty. (Doc. 27).

On May 18, 2007, Defendant filed a formal motion to withdraw the guilty plea. (Doc. # 30).

On May 23, 2007, Defendant filed an amended motion to withdraw guilty plea. (Doc. # 31).

Hearing is currently set on the motion on June 7, 2007.

Defendant will be filing an extraordinary writ for relief in the Supreme Court by mid June 2007, requesting injunctive and declaratory relief. Therefore, any additional proceedings prior to the ruling of the Supreme Court could result in those proceedings being declared moot, and could be a waste of judicial resources.

As the Defendant will show, and to which Defendant concedes, the concept of Title 18 being illegal, invalid or void is not new to the Federal Courts. However, the previous arguments from the government have been *only* based on the issues related to *"sine die adjournment(s)* of the 80[th] Congress in July of 1947." Defendant will also discuss the *sine die* issues in his motion to dismiss, but represents to the Court that his motion also contains arguments that are **WHOLLY SEPARATE, NEW AND DISTINCT FROM ANY OF THE CURRENT PRECEDENTS.** Accordingly, the Court is asked to consider all of the arguments presented and issue its ruling on each separate argument, accordingly.

Further, the *sine die* argument, as may have been presented previously in filings in several Courts across the United States, alleges only a **single defect** in the enactment process of Title 18 U.S.C, specifically the "*sine die*" issue. Defendant argues herein, that there were actually a **wide variety of defects** involving the allegedly proper passage and/or enactment of <u>Public Law 80-772</u>, later, <u>Title 18 of the United States Code</u>. While the *sine die* argument is *one* of the challenges presented in this motion, the complete argument which follows is vastly more extensive and offers a plethora of additional details, including as mentioned before, new points of error not previously provided that also invalidate Title 18.    Thus, even if the Court should again find that the *sine die* argument is without merit, the following list of additional issues related to the passage/enactment of H.R. 3190, P.L. 80-772 or Title 18 will provide this Court with the necessary facts and supporting documentation to support the relief requested through this motion.

## ISSUES PRESENTED HEREIN THAT RELATE TO THE
## ENACTMENT/PASSAGE OF H.R. 3190 OR TITLE 18 U.S.C.

1.    H.R. 3190 or P.L. 80-772, later Title 18 U.S.C. did not pass one or both Houses of Congress in accordance with the provisions of the U.S. Constitution.

2.    H.R. 3190 or P.L. 80-772, later Title 18 U.S.C. was presented to President Harry S. Truman and subsequently signed into law while Congress was adjourned, thus it fails the Quorum, Bicameral and Presentment requirements within the U.S. Constitution.

3.    In 1947 and 1948, during the First and Second Sessions of the 80th Congress, there were at least three separate and distinct instances wherein a recess was taken, which was *sine die* in nature, which effectively caused the death of any pending legislation, including H.R. 3190 or P.L. 80-772, later Title 18 U.S.C..

4.    H.R. 3190 or P.L. 80-772, later Title 18 U.S.C., which passed the House on May 12, 1947, was later amended and *textually different* when it passed the Senate on June 18, 1948. The House only concurred in the amendments and never voted on the full text (amended version) of the bill prior to its presentment to the President for his approval and signature.

As stated above, the main question presented in this motion is "whether or not the enactment of H.R. 3190 into Public Law 80-772 and then into what we now know as Title 18 of the United States Code, was done so in the proper legal and constitutional manner." Defendant contends that there are a number of issues that would prevent such proper legal and constitutional passage or enactment. In furtherance of this contention, Defendant offers the aforementioned list of defects which, whether viewed singularly or plurally, would render Title 18 and its' provisions as *void*. Should this assertion be true, then the Court's exercise of jurisdiction that was used to indict and prosecute Defendant was *ultra vires*, thus causing all actions subsequent to the assumption of jurisdiction by the Court *void ab initio*.

4

Finally, Defendant would also ask the Court to consider **Title 18 U.S.C. § 4001**, which states, "*No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress.*" If the Court finds that at least one of Defendant's issues related to Title 18 is valid, then the only appropriate and constitutionally proper remedy is to immediately release from his indictment and further establish other remedies to correct the void or voidable actions of the District Court which ultimately placed Defendant before the court.

## IV.
## REQUEST FOR EVIDENTIARY HEARING OR ORAL ARGUMENT

In accordance with the ruling in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d. 335 (1986), Defendant requests a full evidentiary hearing on all issues presented to determine the merits of this motion, further allowing Defendant to be present and provide additional testimony and/or evidence at such hearing and to conduct discovery as allowed by law.

## V.
## JUDICIAL NOTICE AND RIGHTS OF DEFENDANT

### A.    JUDICIAL NOTICE AS TO JURISDICTION

Defendant hereby requests the Court to take judicial notice of its authority related to jurisdiction, which is one of the key points of Appeal. In *United States v. Cotton,* 535 U.S. 625, 630, 2002 Lexis 3565 (2002), the term **"jurisdiction"** was defined as, ***"the Courts' statutory or constitutional power to adjudicate the case."*** This concept, also known as "subject-matter jurisdiction", involves a Court's power to hear a case and can

5

never be forfeited or waived. Consequently, defects in subject matter jurisdiction require correction regardless of whether the error was raised in District Court. *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002). Jurisdictional error has been historically recognized as fundamental, and for which collateral relief has been available. Likewise, Habeas Corpus proceedings have been used to attack convictions and sentences entered by a Court without proper jurisdiction. Since jurisdictional error questions a Court's authority to adjudicate a matter before it, such error can never be waived, and the Doctrine of Procedural Default does not apply.

## B.    DEFENDANT'S RIGHTS AS A MATTER OF LAW

Defendant also requests the Court to take judicial notice of <u>entitlements</u> provided to all citizens of the United States under established law, as they relate to his motion. Specifically, Defendant requests judicial notice of the following:

1) <u>Defendant is entitled to have the claim(s) set forth herein, taken as true until proved otherwise or until disproven by affidavit or evidence.</u>[1]

2) <u>Defendant is entitled to discovery related to the jurisdictional claims, as set forth herein.</u>[2]

3) <u>Defendant is entitled to have the Court take judicial notice of the facts and law as they relate to Public Law 80-772, and to have a directed verdict rendered declaring those statutes as unconstitutional.</u> [3]

4) <u>Defendant is entitled to a fair tribunal and an unbiased Court that will ensure any Constitutional rights are upheld and protected. This can only be accomplished if the Court, upon learning of the invalid nature of the statutes in question (Public Law 80-772...Title 18 of the U.S. Code), adhere to, and subsequently apply the provisions of the U.S. Constitution and issue rulings that follow</u>

---

[1] Defendant presents this motion in affidavit form, supported by facts, which must be taken as true. See *Kohlberg v. Lehlback*, 160 U.S. 293, 16 S.Ct. 304, 40 L.Ed. 432 (1895)(facts duly alleged are deemed true unless denied or controverted by evidence); 3 AmJur2d, Affidavits, §20("The courts MUST accept an affidavit as true if it is uncontradicted by a counter-affidavit or evidence").

[2] Where issues arise as to jurisdiction or venue, discovery under the Federal Rules of Civil Procedure (Rules 26-27) is available to ascertain the facts bearing on such issues. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-351, 57 L.Ed.2d. 253, 98 S.Ct. 2380 (1978).

[3] F.R.E. 201. *U.S. v. Boyd*, 289 F.3d 1254. 1258 (10th Cir. 2002); *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001); *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F. 3d 1074, 1083 (7th Cir. 1997).

the "letter of the law", no matter how costly and/or inconvenient to the government. [4]

## C.    DEFENDANT'S DUE PROCESS RIGHTS

An Order or Judgment obtained in violation of due process, obtained by fraud, obtained by collusion of the parties, or obtained without jurisdiction is VOID. See, e.g., Williams v. New Orleans Public Service, Inc., 728 F.2d 730, 735 (5th Cir. 1984); New York Life Insurance Co. v. Brown, 84 F.3d 137, 143 (5th Cir. 1996); Government Financial Services One L.P. v. Peyton Place, 62 F.3d 767, 772-773 (5th Cir. 1995); Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); Bradley v. Fisher, 80 U.S. 335, 351-352, 13 Wall 335, 20 L.Ed. 646 (1871)   Also, where the evidence clearly establishes that there is no jurisdiction over a subject matter, any further action or authority exercised by the Court is unnecessary and without any binding legal or judicial authority.   A Judge who has knowledge that their Court lacks proper subject-matter jurisdiction, but continues to exercise this non-legal authority, is acting in a manner that has been found to be un-excusable.   Angel v. Bullington, 330 U.S. 183 (`1947). **No time limit exists for an attack on a void judgment**.  See Briley v. Hidalgo, 981 F.2d 246, 249 (5th Cir. 1993).  **A void judgment is one that, from its inception, is a complete nullity and without legal effect.**  Holstein v. Chicago, 803 F.Supp. 205, (N.D. Ill. 1992), recons. denied, 149 FRD 147, and affirmed, (7th Cir. 1994), US App LEXIS 17428; Jones v. Giles, 741 F.2d 245 (9th Cir. 1984).  **A court has no discretion regarding a void judgment and the right to relief is absolute**. See Brazosport Towing Co. v 3,838 Tons of Sorghum Laden, 607 F.Supp. 11, 15 to 16 (S.D. Tex. 1984) affirmed without opinion, 790 F.2d 791 (5th Cir. 1985);   Recreational Properties v Southwest Mortgage Services, Inc.  804 F.2d 311, 314 (5th Cir. 1986);  Burnham v Superior Court of California, 495 US 604, 609, 110 S.Ct. 2105, 109 L.Ed.2d 631  (1990)

## D.    RIGHTS PROVIDED BY THE UNITED STATES CONSTITUTION

Defendant brings this motion and asks the Honorable Court for relief from judgment, as a matter of law and in accordance with the rights afforded to each citizen of the United States by and through the U.S. Constitution.  In contrast to using the privileges

---

[4] Constitution of the United States; Separation of Powers Doctrine.

and rights of the Constitution to seek relief, it is the very same Constitution and certain privileges and rights therein, that have been denied or otherwise, not properly afforded to Defendant, which Defendant's motion is based on. Defendant will show that the District Court violated the First, Fourth, Fifth, and Sixth Amendment rights provided under the Constitution of the United States. Therefore, Defendant is entitled to immediate relief, including, but not limited to, any restraints and/or conditions set out in the indictment and orders of the court, which may include Defendant's confinement or constraints. The relief should also include the subsequent voiding of the indictment and any other written instruments that have restricted or completely removed Defendant's constitutional rights.

In this motion, Defendant establishes that the District Court never had proper jurisdiction over the criminal prosecution and proceedings, and upon being notified of this deficiency, is required by law to address and/or correct this deficiency, "**Sua sponte**" or on its' own accord and without prompting from anyone. Consequently, since the District Court has no jurisdiction, Defendant is actually innocent of any crimes alleged or charged and any current incarceration or confinement of Defendant is unconstitutional and illegal in nature. "**Nullum crimen, nulla poena sine preavia lege poenali**", meaning, "(No crime [may be committed], no punishment [may be imposed] without a previous penal law." Accordingly, in the interest of justice and as a matter of law, Defendant is entitled to each and every remedy this Court should find appropriate and necessary.

## VI.
## POINTS OF ERROR

## POINT OF ERROR RELATED TO TITLE 18
### TITLE 18 IS INVALID LAW AND UNCONSTITUTIONAL

The Supreme Court has provided that "precedent suggests that civil and criminal harmless-error standards do not differ in their treatment of grave doubt as to the

8

harmlessness of errors affecting substantial rights." O'Neal v. McAninch, 130 L.Ed. 2d

947, 955 (1995).

In the instant case, the judgment of the federal court was *void* because the actions

of the court were *ultra vires*, without legal authority. Since the actions of the court were

*ultra vires*, the District Court compounded the error and violated Due Process by failing

to act as an independent court as required by the Constitution and the District Court's

own standards.[5]

**ISSUE ONE:    THE DISTRICT COURT'S ACTIONS WERE *ULTRA VIRES* AND DEFENDANT IS BEING ILLEGALLY HELD IN CUSTODY**

**I.    THE DISTRICT COURT ORDER UNDER WHICH DEFENDANT IS COMMITTED TO CUSTODY PURSUANT TO THE JURISDICTIONAL GRANT OF 18 U.S.C. § 3231 (OF PUBLIC LAW 80-772) WAS ISSUED *ULTRA VIRES*, UNCONSTITUTIONAL, AND, THEREFORE, THE DISTRICT COURT LACKS JURISDICTION.**

The District Court got its jurisdiction over Defendant from 18 U.S.C. § 3231,

which purportedly gives the "district courts of the United States ... original jurisdiction

... of all offenses against the laws of the United States." § 3231, as well as most of

chapter 211 (entitled "Jurisdiction and Venue") of Title 18, was codified on June 25,

1948, when Title 18 was originally codified upon the enactment of Public Law 80-772, in

the Second Session of the 80th Congress.

---

[5] "Article III of the United States Constitution establishes the judicial branch as one of the **three separate and distinct** branches of the federal government. The other two are the legislative and executive branches.
The federal courts often are called the **guardians of the Constitution** because their rulings protect rights and liberties guaranteed by the Constitution. Through **fair and impartial judgments**, the federal courts interpret and apply the law to resolve disputes. **The courts do not make the laws**. That is the responsibility of Congress. **Nor do the courts have the power to enforce the laws**. That is the role of the President and the many executive branch departments and agencies.
**The founding fathers of the nation considered an independent federal judiciary essential to ensure fairness and equal justice for all citizens of the United States.** The Constitution they drafted promotes judicial independence in two major ways. First, federal judges are appointed for life, and they can be removed from office only through  impeachment and conviction by Congress of "Treason, Bribery, or other high Crimes and Misdemeanors." Second, the Constitution provides that the compensation of federal judges "shall not be diminished during their Continuance of Office," which means that neither the President nor Congress can reduce the salary of a federal judge. These two protections help an independent judiciary to decide cases free from popular passions and political influence." About the U.S. Courts, available for download at www.uscourts.gov/about.html.

"The challenge in this case goes to the subject-matter jurisdiction of the [District] Court and hence its power to issue the order." United States Catholic Conference v. Abortion Mobilization, Inc., 487 U.S. 72, 77 (1988), committing Defendant to imprisonment in Executive custody. Thus, the "question is, whether ... [the District Court's] action is judicial or extra-judicial, with or without the authority of law to render [the] judgment," Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) 657, 718 (1838), and to issue the commitment order.

"Federal courts are courts of limited jurisdiction ... Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction." Insurance Co. of Ireland, Ltd. v. Compagnie des Bauxite de Guinea, 456 U.S. 694, 701 (1982); Kline v. Burke Const. Co., 260 U.S. 226, 234 (1922)(all lower federal courts "derive[] [their] jurisdiction wholly from the authority of Congress"); United States v. Hudson & Goodwin, 11 U.S. (7 Cranch) 32, 33 (1812) (federal courts "possess no jurisdiction but what is given to them by the power that creates them."). If anything, this is even truer in criminal cases. United States v. Hall, 98 U.S. 343, 345 (1879)(federal "courts possess no jurisdiction over crimes and offenses ... except what is given to them by the power that created them"); Hudson & Goodwin, 11 U.S. at 33-34. See also, e.g., United States v. Wiliberger, 18 U.S. (5 Wheat) 76, 95-105 (1820)("the power of punishment is vested in the legislative, not the judicial department," criminal statutes are to be construed strictly, "probability" cannot serve to "enlarge a statute" and an offense not clearly within the terms of a statute precludes federal court jurisdiction).

Subject-matter jurisdiction means "'the courts' statutory or constitutional power to adjudicate the case,'" United States v. Cotton, 535 U.S. 625, 630 (2002) (quoting Steel

Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998)); Rhode Island, 37 U.S. at 718 ("Jurisdiction is the power to hear and determine the subject-matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them"); Reynolds v. Stockton, 140 U.S. 254, 268 (1891) ("Jurisdiction may be defined to be the right to adjudicate concerning the subject matter in a given case"). "Subject matter limitations on federal jurisdiction serve institutional interests by keeping the federal courts within the bounds the Constitution and Congress have prescribed," Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).

"Without jurisdiction the court cannot proceed at all in any cause ... and when it ceases to exist, the only function of the court is that of announcing the fact and dismissing the cause." Steel Co., 523 U.S. at 94 (quoting Ex parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868)); Willy v. Coastal Corp., 503 U.S. 131, 137 (1992)("lack of subject-matter jurisdiction ... precludes further adjudication"). The Supreme Court has asserted over and over that "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" Steel Co., 523 U.S. at 94-95 (quoting Mansfield C.&L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884)); *see also*, Insurance Co. of Ireland, 456 U.S. at 702.

Because subject matter jurisdiction "involves a court's power to hear a case, [and thus] can never be forfeited or waived ... correction [is mandatory] whether the error was raised in district court" or not. Cotton, 535 U.S. at 630; Steel Co., 523 U.S. at 94-95. When a district court did "not have subject-matter jurisdiction over the underlying action ... [its] process[es] [are] *void* and an order of [punishment] based [thereupon] ... must be

reversed." United States Catholic Conf., 487 U.S. at 77; Willy, 503 U.S. at 139 ("[T]he [punishment] order itself should fall with a showing that the court was without authority to enter the decree."); Ex parte Fisk, 113 U.S. 713, 718 (1885)("When ... a court of the United States undertakes, by its process ... to punish a man ... [respecting] an order which that court had no authority to make, the order itself, being without jurisdiction, is *void* and the order punishing ... is equally *void*)).

Habeas corpus review, "is limited to the examination of the jurisdiction of the court whose judgment of conviction is challenged." Bowen v. Johnson, 306 U.S. 19, 23 (1939); *see also* INS v. St. Cyr, 533 U.S. 289, 311-314 (2001). A court "has jurisdiction to render a particular judgment only when the offense charged is within the class of offenses placed by the law under its jurisdiction." Bowen, 306 U.S. at 24. If it is found that the court lacked jurisdiction to try Defendant, the judgment is *void* because the court lacked jurisdiction, the prisoner must be discharged. Ex parte Yarbrough, 110 U.S. 651, 654 (1884).

Defendant has established that H.R. 3190[6]: (1) failed to pass one or both Houses of Congress and/or (2) that the legislative process continued after Congress adjourned *sine die* by legislative officers acting pursuant to H.Res. 219, all of which violated Article I, Section 5, Clause 1, Article I, Section 7, Clause 2, and/or Article I, Section 7, Clause 3 of the Constitution– and any of which rendered Public Law 80-772 unconstitutional and *void ab initio*. Therefore, because "the offense[s] charged ... [were] placed by the law under [the] jurisdiction," of the district court pursuant to 18 U.S.C. § 3231 of Public Law 80-772, which is unconstitutional and "*void*, the court was without jurisdiction and the prisoner must be discharged." Yarbrough, 110 U.S. at 654. Since Public Law 80-772 has

---

[6] Which became Public Law 80-772.

never been enacted as required by Article I, Section 5, Clause 1, Article I, Section 7, Clause 2, and Article I, Section 7, Clause 3 of the Constitution, thereof, rendering *void ab initio* the jurisdiction by which the district court acted to convict, enter judgment, and order Defendant imprisoned in Executive custody, the district court's actions were "*ultra vires*," [Ruhrgas AG, 526 U.S. at 583 (*quoting* Steel Co., 523 U.S. at 101-102)] and "*coram non judice*." Rhode Island, 37 U.S. at 720.

The proceedings including the conviction and judgment thereupon "being without jurisdiction, is *void*, and the order punishing ... [is] equally *void*." Fisk, 113 U.S. at 718; United States Cath. Conf., 487 U.S. at 77; Willy, 503 U.S. at 139. This is precisely the office and function of habeas corpus – i.e., to "examin[e] .. the jurisdiction of the court whose judgment of conviction is challenged," [Bowen, 306 U.S. at 23] and where, as here, the court was clearly "without jurisdiction ... the prisoner ... must be discharged." Yarbrough, 110 U.S. at 654.

## II.    TITLE 18 (PUB. L. 80-772) IS UNCONSTITUTIONAL

### A. Background Facts Introducing H.R. 3190

After numerous failed attempts, a bill -- H.R. 3190 -- was introduced with a Report by the Committee on the Judiciary, House of Representatives, and committed to the Committee of the entire House of Representatives on the State of the Union of the First Session of the 80th Congress (1947), entitled "Crimes and Criminal Procedure."[7] *See* HOUSE REPORT No. 304 (April 24, 1947), cover & pg. 1 **(App. A)**; *see also* 94 CONG. REC. D556-57 (DAILY DIGEST)(charting H.R. 3190) **(App. B)**. H.R. 3190 differed from "five ...bills which...preceded it... [because] it constitute[d] a revision, as well as a

---

[7] May 12, 1947.

codification, of the Federal laws relating to crimes and criminal procedure." 93 CONG. REC. 5048-49 (May 12, 1947) **(App. C)**. The Bill was intended (1) to revise and compile **all** of the criminal law, (2) to "restate[]" and "consolidate[]" "existing statutes," (3) to "repeal" "obsolete, superseded, redundant and repetitious statutes," (4) to coordinate the Criminal Code with the "Federal Rules of Criminal Procedure" formerly enacted, and (4) to "clarify and harmonize" penalties of the "many acts" passed by Congress which were found to be "almost identical." (Id.). "The bill was ordered to be engrossed and read a third time, was read a third time, and passed" the House on May 12, 1947, id; 94 CONG. REC. D556-57 (DAILY DIGEST), supra **(App. B)**, sent to the Senate and there "referred to the Committee on the Judiciary." 93 CONG. REC. 5121 **(App. D)**.

### B. Congress Adjourned *Sine Die* Without the Senate's Passage of H.R. 3190

On July 27, 1947, Congress conditionally adjourned pursuant to Sen. Con. Res. 33, without the Senate ever taking up H.R. 3190. *See* 93 CONG. REC. 10439, 10522 (July 26, 1947) **(App. E)**. "In effect the [July 27, 1947] adjournment was a *sine die* adjournment, not an intersession adjournment." Kennedy v. Sampson, 511 F.2d 430, 444, Appendix n.4 (D.C. Cir. 1974).[8]

### C. Congress Adjourned *Sine Die* A Second Time Without the Senate's Passage of H.R. 3190

On November 17, 1947, Congress reconvened pursuant to a Presidential proclamation. Yet, Congress again "adjourned *sine die* on December 19, 1947," without

---

[8] Noting that [t]he President *pocket vetoed* 19 bills presented to him after the adjournment," id., establishing that the adjournment was unequivocally *sine die*. Kennedy, 511 F.2d at 444, Appendix, n. 4. ("The Senate and the House of Representatives [of the 80th Congress] adjourned on July 27, 1947, under a 'conditional final adjournment' resolution, H.Con. Res. 33"); 93 CONG. REC. 10400. Pursuant to the resolution, the two Houses were to stand in adjournment until January 2, 1948 unless recalled into session earlier by specified Senate and House leaders. In effect, the adjournment was a *sine die* adjournment, not an intra session adjournment. On November 17, 1947, Congress convened pursuant to a proclamation of President Truman and adjourned *sine die* on December 19, 1947. The President *pocket vetoed* 19 bills presented to him after the adjournment of July 27, 1947").

14

the Senate passing H.R. 3190. Kennedy, 511 F.2d at 444, Appendix n.4. Thus, the First Session of the 80th Congress adjourned *sine die* **twice** and closed without H.R. 3190 passing both houses as required. *See also* House Concurrent Resolution No. 127, 80th Congress, 1st Session, Dec. 19, 1947, 61 Stat 1029 (declaring the Dec. 19, 1947 adjournment to be an adjournment *"sine die"* "notwithstanding the provisions of Sen. Con. Res. 33") **(App. F)**; UNITED STATES CODE SERVICE, LAWS OF THE 80TH CONGRESS, FIRST SESSION, West Publishing Co. & Ed. Thompson Co. 1947, Adjournment Resolutions, H.Con. Res. 127, pg. LXXXIX (Dec. 19, 1947 adjournment was *sine die*) **(App. G).**

### D. H.R. 3190: The Immortal Bill

H.R. 3190 was never reintroduced by the House of Representatives during the Second Session of the 80th Congress, which began on January 2, 1948. Nevertheless, the Senate Committee on the Judiciary purported to resurrect H.R. 3190 with amendments on June 14, 1948, under Sen. Rep. No. 1620, without regard that it had *died*, not once, but *twice*, upon the *sine die* adjournments of the 80th Congress' First Session. The Bill was purportedly reintroduced (under the same number no less) as if it had passed the House in the Second Session, which it did not. 94 CONG. REC. 8075 (June 14, 1948) **(App. H).** Compare 94 CONG. REC. D556-57 (DAILY DIGEST), supra **(App. B)** (showing only introduction of H.R. 3190 by the House of Representatives on April 24, 1947).

Significantly, H.R. 3190 was purportedly introduced into the Senate under Sen. Rep. No. 1620 with a "large volume of amendments" explaining that "the new Federal Rules of Criminal Procedure [were] keyed to the bill and [were] reflected in part II of [the

15

new proposed] title 18." The supporters of the Bill proffered that, by passing the bill, "[u]ncertainty will be ended." Its supporters wanted "the amendments adopted en bloc," including a new jurisdictional section for Title 18.

In fact, H.R. 3190 was **not** included in Sen. Rep. No. 1620 and **only the text of the proposed amendments were included, therein**. *See*, Sen. Rep. No. 1620 **(App. I).**

"[T]he amendments were considered and agreed to en bloc" after which they were read and then "ordered to be engrossed." 94 CONG. REC. 8721-22 (June 18, 1948) **(App. J).** The bill itself – wholly separate from the "amendments – was "ordered…to be read a third time" which it was and it "passed" the Senate. It was moved that "the Senate insist upon its amendments" to H.R. 3190 in the House. (Id. at 8722).

The House subsequently received Sen. Rep. No. 1620 purporting to contain H.R. 3190 with proposed amendments. The House clerk "read the Senate amendments" into the record, with which the House concurred. 94 CONG. REC. 8864-65 (June 18, 1948) **(App. K).** The House **never** voted on the text of H.R. 3190, amended or otherwise, **at that time or at any other time** during the Second Session of the 80th Congress. Other than concurring with the Senate amendments, the House took no action on H.R. 3190, which was reintroduced into the Second Session of the 80th Congress by the Senate through Sen. Rep. No. 1620 for the first time on June 18, 1948. Specifically, H.Con. Res. 219 resolved that notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions. *See* CONCURRENT RESOLUTIONS, SECOND SESSION, 80th Cong., H.Con. Res. 219, June 20, 1948, 62 Stat. 1436 **(App. L).**

16

### E. By House Resolutions 218 and 219, Congress Agreed to Adjourn *Sine Die* and to Continue Legislative Business Thereafter

On June 19, 1948, the Senate informed the House that "the Senate had passed without amendment concurrent resolutions of the House," namely H.Con. Res. 218 and 219. 94 CONG. REC. 9349 **(App. M)**. H.Con. Res. 218 "provid[ed] adjournment of the two Houses of Congress until December 31, 1948" and H.Con. Res. 219 "authoriz[ed] the signing of enrolled bills following adjournment." (Id.).

### F. The Second Session of the 80th Congress Adjourned *Sine Die*

Congress adjourned on June 20, 1948, pursuant to H.Con. Res. 218, which required re-assembly on "Friday, December 31, 1948, at 12 o'clock meridian." 94 CONG. REC. 9349, 9169 **(App. N)**. The adjournment was "in effect...a *sine die* adjournment, not an inter-session adjournment." Kennedy, 511 F.2d at 444, Appendix, n. 5.[9]  Neither House of Congress was in session thereafter until July 26, 1948, when both Houses reconvened "pursuant to a proclamation of President Truman." Kennedy, 511 F.2d at 444, Appendix, n. 5.

### G. The Improper Signing of H.R. 3190 by the Speaker of the House and President Pro Tempore of the Senate, and the Illegal Presentment to and Approval Thereof by the President Pursuant to H.Con. Res. 219

With both Houses adjourned *sine die*, with no quorum, with Congress disassembled and dispersed, the Speaker of the House and President pro tempore signed H.R. 3190[10] on June 23, 1948.  94 CONG. REC. 9354 **(App. O)**; National Archives &

---

[9] Noting that "[t]he President pocket vetoed 14 bills presented to him after the adjournment," establishing that the adjournment was unequivocally *sine die*. Kennedy, 511 F.2d at 444, Appendix, n. 5 ("The Senate and House of Representatives [of the 80th Congress] adjourned on June 20, 1948, under a "conditional final adjournment" resolution, H.Con. Res. 218; 94 CONG. REC. 9158. Pursuant to the resolution, the two Houses were to stand in adjournment until December 31, 1948, unless recalled into session earlier by specified Senate and House leaders.  In effect, the adjournment was a *sine die* adjournment, not an intra session adjournment.  On July 26, 1948, Congress convened pursuant to a proclamation of President Truman.  The President *pocket vetoed* 14 bills presented to him after the adjournment of June 20, 1948").

[10] As previously noted, the Senate voted on the amendments proposed under Sen. Rep. No. 1620 separately from H.R. 3190 itself. Moreover, the Senate ordered the amendments in question to be "engrossed" before and separately from the "read[ing]" and

Records Adm. Cert., H.R. 3190 signed by the Speaker, President Pro Tempore, and President Truman. **(App. P).** Again the Congress adjourned *sine die*, disassembled, dispersed, with no quorum to do business, the bill was purportedly presented by the Committee on House Administration to President Truman, on June 23, 1948, who then signed H.R. 3190 on June 25, 1948 at 12:23 P.M. E.D.T., 94 CONG. REC. 9364-67 **(App. Q);** National Archives & Records Adm. Cert., H.R. 3190, supra **(App. P);** 94 CONG. REC. D557 (DAILY DIGEST), supra **(App. B).**

### H. The Signatories of H.R. 3190 Knew the Enacting Clause Was False When Signed

The enacting clause of Public Law 80-772 (H.R. 3190), **as signed** by the Speaker of the House, the President pro tempore of the Senate, and President Truman, stated that the enactment proceeded "by the Senate and House of Representatives of the United States of America **in Congress assembled**." *See* National Archives & Records Adm. Cert., H.R. 3190 as signed into P.L. 80-772, supra **(App. P)**. Each signatory knew when he signed the Bill that Congress had already been adjourned and disassembled, that neither "House" was legislatively in existence at that time, and that the legislative process had **ceased** within the terms of Article I, Section 5 and Article I, Section 7 on June 20, 1948.

### I. Defendant Is in Custody Under Indictment Issued Pursuant to Public Law 80-772, 18 U.S.C. § 3231

Defendant has been indicted and committed into Executive custody by order of United States District Court[11] acting pursuant to grant of original jurisdiction purportedly

---

"pass[age]" of H.R. 3190. *See* 94 CONG. REC. 8722, supra **(App. J).** The House voted on the amendments in question, but never voted on H.R. 3190 at any time during the Second Session of the 80th Congress. 94 CONG. REC. 8864-65, supra **(App. K).**
[11] Copies of the indictment of Defendant is submitted in **Appendix R.**

enacted by Public Law 80-772, 18 U.S.C. § 3231. The indicting District Court ordered

Defendant to be kept under the custody of the Attorney General of the United States. See

18 USC § 3142(e).

## III.   FAULTY ENACTMENT OF PUBLIC LAW 80-772

### A. Public Law 80-772 Is Unconstitutional Because H.R. 3190 Never Passed Both Houses As Required by Article I, Section 7, Clause 2, of the United States Constitution, and Is Therefore, Void *Ab Initio*

### 1. The Legal Principle

This case presents the "profoundly important issue"[12] of the constitutionality of an

act of Congress.[13]   Indeed, it presents a matter "'of such public importance as to justify

deviation from normal appellate practice and to require immediate determination by this

Court.'" Clinton v. New York, 524 U.S. 417, 455 (Scalia, J., and O'Connor, J., joining in

part and dissenting in part) (adopting language directly from Sup. Ct. R. 11).[14]

Although "[a]ll legislative Powers herein granted shall be vested in a Congress of

the United States, which shall consist of a Senate and a House of Representatives," (Art.

I, § 1, U.S. Const.) "when [Congress] exercised its legislative power, it must follow the

'single, finely wrought and exhaustively considered procedures' specified in Article I."

Metropolitan Wash. Airports, 501 U.S. at 274 (*quoting* Chadha, 462 U.S. at 951). Article

1 establishes "just how those powers are to be exercised." Chadha, 462 U.S. at 945.

An act of Congress "does not become a law unless it follows each and every

procedural step chartered in Article I, §7, cl. 2, of the Constitution."   Landgraf v. USI

---

[12] Clinton, 524 U.S. at 439 (1998).

[13] INS v. Chadha, 462 U.S. 919, 929 (1983).

[14] Clinton, 524 U.S. at 447, "twice had full argument and briefing," as did Chadha, 462 U.S. at 943-44 ("The important issues have been fully briefed and twice argued."); "[T]he importance of the question," Metropolitan Washington Airports Authority v. Citizens for the Abatement of Aircraft Noise, Inc., 501 U.S. 252, 263 (1991), has always been noted; Wright v. United States, 302 U.S. 583, 586 (1983)("the importance of the question"); The Pocket Veto Case, 279 U.S. 655, 673 (1929)("the public importance of the question presented"); Missouri Pacific Railway Co. v. Kansas, 248 U.S. 276, 279 (1919)("the importance of the subject").

Film Products, 511 U.S. 244, 263 (1994)(citing Chadha, 462 U.S. at 946-51 (emphasis added)); Clinton, 524 U.S. at 448 (noting requisite "steps" taken before bill in question may "'become a law'" and establishing that a procedurally defective enactment cannot "'become a law'" pursuant to the procedures designed by the Framers of Article I, § 7, of the Constitution).

The United States Constitution requires "three procedural steps": (1) a bill containing its exact text be approved by a majority of the Members of the House of Representatives; (2) the Senate approve **precisely the same text**; and (3) **that text** be signed into law by the President. The United States Supreme Court has stated: "If one paragraph of *that text* had been omitted **at any one of those three stages**, [the] law [in question] would not have been validly enacted."[15] Clinton, 524 U.S. at 448 (emphasis added).

The "draftsmen" of the Constitution "took special pains to assure these [legislative] requirements could not be circumvented. During the final debates on Art. I, § 7, Cl. 2, James Madison expressed concern that it might easily be evaded by the simple expedient of calling a proposal a 'resolution' or 'vote' rather than a 'bill.' As a consequence, Art. I, § 7, Cl. 3, …was added." Chadha, 462 U.S. at 947 (citing 2 Farrand, 301-302, 304-305).

---

[15] All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives.
Art. I, § 1, of the Constitution.

[A] Majority of each [House] shall constitute a Quorum to do Business…
Art. I, § 5, Cl. 1.

Every Bill which shall have passed [both Houses], shall before it becomes a Law be presented to the President of the United States; If he approve he shall sign it…
Art. I, § 7, Cl. 2.

Every … Resolution…to which the Concurrence of [both Houses] may be necessary (except on a question of Adjournment) shall be presented to the President of the United States and before the Same shall take effect, shall be approved by him…
Art. I, § 7, Cl. 3.

Whether actions authorized under a resolution are "an exercise of legislative powers depends not on their form but upon 'whether they contain matter which is properly to be regarded as legislative in its character and effect,'" Chadha, 462 U.S. at 952 (quoting Sen. Rep. No. 1335, 54th Cong. 2d Sess., 8 (1897). "If the power is legislative, Congress must exercise it in conformity with the bicameralism and presentment requirements of Art. I, § 7." Metropolitan Wash. Airports, 501 U.S. at 276. *See also* Bowsher v. Synar, 478 U.S. 714, 756 (1986) (Stevens, J., concurring) ("It is settled, however, that if a resolution is intended to make policy that will bind the Nation, and thus is 'legislative in its character and effect,' Sen. Rep. No. 1335, 54th Cong., 2d Sess., 8 (1897) – then the full Article I requirements must be observed. For 'the nature or substance of the resolution, and not its form, controls the question of its disposition.' Ibid.").

Title 1, U.S.C. § 106 (enacted July 30, 1947), ch. 388, § 1, 61 Stat. 634, requires: "When [a] bill or joint resolution shall have passed both Houses, it shall be printed and shall then be called the enrolled bill, or joint resolution as the case may be, and shall be signed by the presiding officers of both Houses and sent to the President of the United States." The statute provides: "During the last six days of a session such engrossing and enrolling of bills and joint resolutions may be done otherwise than as above prescribed, upon the order of Congress by concurrent resolution." (Emphasis added). Thus, although engrossment and enrollment of bills and resolutions may be completed in exceptional manner "[d]uring the last six days of a session," the text and context clearly reveal the procedures involved are required to be performed while Congress is **in session**.

## 2. The First Death of H.R. 3190

Congress indisputably adjourned *sine die* on July 27, 1947, thereby breaking the continuity of that legislative session. Constitution, JEFFERSON'S MANUAL & RULES OF THE HOUSE OF REPRESENTATIVES, 79th Cong. 2d Session, (H.Doc. No. 769); Rules of the House of Representatives, § 941, Sec. 132, pg. 459 (Leg. Reorganization Act of 1946 mandating that both "Houses shall adjourn *sine die* no later than the last day of...July of each year"). *See also*, Kennedy, 511 F.2d at 444 Appendix n. 4; Anderson v. Dunn, 19 U.S. (6 Wheat) 204, 231 (1821)("[T]he legislative body ceases to exist on the moment of its adjournment or periodic dissolution...   Continuity of a session of Congress is broken...by an adjournment *sine die*"), limited and partially overruled on other grounds, Kilbourne v. Thompson, 103 U.S. 168, 196-99 (1881); The Pocket Veto Case, 279 U.S. 655, 681 (1929)(final adjournment "terminates the legislative existence of the Congress"); House Doc. No. 769, supra, JEFFERSON'S MANUAL, pg. 265 (emphasis added) (applying Art. I, § 3, U.S. Const. **(App.S)**. *See also* 106TH CONGRESS HOUSE RULES MANUAL, House Doc. No. 106-320, pg. 301 **(App. T)** (same).

The July 27, 1947, adjournment *sine die* caused the death of H.R. 3190, because all pending legislation dies upon such adjournment. See F. Riddick, THE UNITED STATES CONGRESS: ORGANIZATION AND PROCEDURE 56 (1949). See also Memorandum for Janet Reno, Attorney General, from Acting Asst. AG Chris Schroeder, Office of Legal Counsel, U.S. Dept. of Justice (Nov. 19, 1996) (Adjournment *sine die* "'produce[s]...the death of all pending legislation'") (*quoting* Continuing Effect of a Congressional Subpoena Following the Adjournment of Congress, 6 Op. O.L.C. 744 (1982) and citing

F. Riddick, THE UNITED STATES CONGRESS: ORGANIZATION AND PROCEDURE, supra at 56).

### 3. H.R. 3190 Dies a Second Time

Congress re-convened on November 17, 1947, by Presidential proclamation. Even assuming the adjournment on July 27, 1947, did not close the former session, the reconvention undoubtedly did because it began a new session as a matter of law.  As established by a Congressional Manual, "If convened by the President's proclamation, [Congress] **must** begin a new session, and **of course** determine the preceding one to have been a session... [Such] act of adjournment is merged in the higher authority of the Constitution."  House Doc. No. 769, supra, JEFFERSON'S MANUAL, pg. 265 (emphasis added) (applying Art. I, § 3, U.S. Const, supra. **(App. S);** 106TH CONGRESS HOUSE MANUAL, pg. 301-302, supra **(App. T)** (same).

The Presidential proclamation "beg[a]n a new session and of course determine[d] the preceding [session] to have been a [concluded] session," effectively rendering it adjourned *sine die* and thereby "terminat[ing] the legislative existence of Congress."  The Pocket Veto Case, 279 U.S. at 681.

"Congress [can] separate in two ways only, to wit, by adjournment or dissolution by the efflux of their time."  106TH CONG. H.RULES MANUAL, House Doc. No. 106-320, supra at 301 **(App. T)** (emphasis added).  The convention of a session by Presidential proclamation has no relation to "dissolution by the efflux of" a congressman's "time".  Such a Presidential convention can *only* effectuate an adjournment *sine die* because it acts to cut off or close the prior session. Id., pg. 301-302.

Thus, the "new session," exclusively "terminate[d]" the prior session and its "legislative existence." The Pocket Veto Case, 279 U.S. at 681. At that time, "all pending matters…discontinued and all parliamentary functions cease[d]." MEMO FOR AG, supra (*citing* McGrain v. Daugherty, 273 U.S. 135, 181 (1927)(relying on SENATE RULES AND MANUAL, 1925, pg. 303)). Therefore, even if the adjournment *sine die* on July 27, 1947, did not "'produce[]'" or "result in" "the death of [H.R. 3910, which had] not [yet been] enacted," the reconvening of Congress by Presidential proclamation certainly and unavoidably did.

### 4. The Third and Penultimate Death of H.R. 3190

The Congressional session which was convened by Presidential proclamation on November 17, 1947, "adjourned *sine die* on December 19, 1947." Kennedy, 511 F.2d at 444, Appendix n. 4. The adjournment caused "'the death of all pending legislation not enacted,'" which included H.R. 3910. MEMO FOR AG, supra (citation omitted). H.R. 3190 certainly died with the adjournment *sine die* on July 27, 1947. But, even if it did not, it certainly did when Congress met in "a new session" pursuant to Presidential proclamation and under "the higher authority of the Constitution [Art. I, § 3]." 106TH CONG. H. RULES MANUAL at 301-302, supra (**App. T**). But, then again, the "adjourn[ment] *sine die* on December 19, 1947," undoubtedly "'produce[d]…the death'" of H.R. 3190, if it had somehow survived the earlier effectual adjournment *sine die*.

Congress in any case expressly declared the December 19, 1947, adjournment to be an adjournment *sine die*. H.Con. Res. No. 127, 80th Congress, 1st Session, Dec. 19, 1947, 61 Stat 1029, supra (**App. F**); UNITED STATES CODE SERVICE, LAWS OF THE 80TH CONGRESS, FIRST SESSION, H. Con.Res. 127, supra, pg. LXXXIX (**App. G**).

H.R. 3190 was not re-introduced in the "new session" of Congress, which began under Presidential proclamation on November 17, 1947, or at any time by the House of Representatives during the Second regular Session (1048) of the 80th Congress. H.R. 3190 reappeared, albeit by number only, and without text, under Sen. Rep. 1620 on June 14, 1948, as if it had never died during the previous adjournments *sine die* or as if it had been re-introduced under the same House of Representatives' number with which it had originally entered the House, on May 12, 1947. 94 CONG. REC. 8075, supra **(App. H)**; Sen. Rep. 1620), supra **(App. I)**; 93 CONG. REC. 5048-49 (original introduction of H.R. 3190), supra **(App. C)**.

Sen. Rep. 1620 "contain[ed] a large volume of amendments" purportedly intended for H.R. 3190, which had never been previously presented to the House of Representatives, and which were hastily "agreed to en bloc," "read", and "ordered to be engrossed." Then, and quite separate from the action upon the amendments, the Bill (H.R. 3190) was "ordered...to be read a third time," and it "passed" the Senate.[16] The amendments and H.R. 3190 were then received by the House of Representatives, where the Clerk read only the amendments contained in Sen. Rep. No. 1620. The House of Representatives did not address in any way the text of H.R. 3190, but merely concurred in "[t]he Senate amendments." 94 CONG. REC. 8864-65, supra **(App. K)**.

The House of Representatives never considered or voted on the text of H.R. 3190 – the bill itself – during this session of Congress, and on June 20, 1948, entered an adjournment that was "in effect...a *sine die* adjournment," Kennedy, 511 F.2d at 444,

---

[16] The first and second readings of H.R. 3190 were the readings in the session of Congress which ended by adjournment *sine die* on July 27, 1947, because it had not been subject to discussion, debate, or consideration since that session ended. National Archives & Records Adm. Cert., H.R. 3190, supra **(App. P)**. Thus the first and second readings of the bill in the Senate were on the bill that was passed by the House in the First Session, not the amended bill that was presented to the President for signature.

Appendix n. 5. That part of H.R. 3190 that "passed" the Senate on June 18, 1948, 94 CONG. REC. 8721-8722, supra **(App. J)**, was that text which was read for the "third time." The **amendments** under Sen. Rep. No. 1620 were **read a single time** in the House, but H.R. 3190 **as purportedly amended** was never read in either House **at any time**, was not voted upon **at any time**, and never passed **at any time**. The Senate's order to "engross" the "amendments" –clearly not engrossed on June 18, 1948, when H.R. 3190 was read for the third time - establishes that the bill read for the "third time" by the Senate (and never voted on by the House in that session) was **an entirely different bill textually** than the one signed by the Speaker of the House, the President pro tempore of the Senate, and President Truman.

*To illustrate and provide undeniable proof of the aforementioned actions, ioner would direct the Court to Appendix V(1), which is the version of H.R. 3190 read in the House of Representatives in 1947. Appendix V(2) is the version of H.R. 3190 read in the Senate in 1947. The last page of Appendix V(4) shows that Title 18 (H.R. 3190) was not enacted into positive law in 1947. Appendix V(3) then shows the Senate's hand-written and typed amendments to Appendixes V(1) and V(2). Appendix V(3) also reveals on its first page what was read in the Senate in June, 1948. Appendix V(4) is the bill that was signed into law in June, 1948. It clearly is the amended Appendix V(3) with the hand-written and typed amendments transformed into printer's ink. Further, it is obviously not the same bill that was read twice in 1947.*

*Appendices V(1), V(2), V(3), and V(4) conclusively show that in 1948 the Senate read the amended bill – not the original one read in 1947. Thus, there were no three readings of the same bill. There were two readings of the 1947 bill that died sine die*

26

*twice and never transformed into positive law and there was only a single reading of the amended bill in 1948. The law we have now, known as Title 18 of the U.S. Code, is the 1948 amended version, not the 1947 version. The amended 1948 bill, which was shown to have only been read once in the Senate only, is void ab initio because it was enacted contrary to the Constitutional prescription for valid Congressional enactment of laws. See, U.S. Constitution, Article I, Section 7, Clause 2.*

*Accordingly, Defendant was indicted under the amended 1948 criminal law statute, which cannot pass constitutional muster as demonstrated by Appendices V(1) through V(4). Thus, the government's indictment of Defendant is fatally defective because the indictment has no valid legal underpinnings. An indictment cannot hover in abstract space and must be tethered to positive law enacted in accordance with the constitutional prescription(s).*

### 5. Congress' Attempt to Resurrect H.R. 3190 by Means of Post-Adjournment Legislation Pursuant to H.Con. Res. 219 Violated the Quorum, Bicameral, and Presentment Requirements of Article I of the Constitution.

After Congress adjourned *sine die* on June 20, 1948, pursuant to H.Con. Res. 219, a single officer of each House of Congress signed a bill purporting to be H.R. 3190 on June 23, 1948, 94 CONG. REC. 9354, supra (**App. O**), and presented **that bill** to the President, who signed it on June 25, 1948. 94 CONG. REC. 9365-67 (**App. Q**). Thus, the post-adjournment signature "provision [of H.Con. Res. 219] was an important part of the legislative scheme," leading to the enactment of Public Law 80-772, without which it would never have "become a Law." Bowsher, 478 U.S. at 728. Public Law 80-772 expressly **and falsely** stated that it was "enacted" while both Houses were "in Congress

27

assembled," when in fact, **Congress was not in session**. See National Archives & Records Adm. Cert. H.R. 3190 as signed into P.L. 80-772, supra **(App. P).**

1 U.S.C. § 101 requires every "enacting clause of all Acts of Congress" to state: "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled." The Supreme Court, in <u>Marshall Field & Co. v. Clark</u>, 143 U.S. 649 (1892), defined the essence of this procedure:

> **The signing** by the Speaker of the House of Representatives, and, by the President of the Senate, **in open session, of an enrolled bill is an official attestation by the two houses** of such bill as one that has passed Congress. It is a **declaration by the two houses**, through their presiding officers, **to the President**, that a bill, thus attested, has received in due form, **the sanction of the legislative branch** of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass Congress shall be presented to him.
>
> 143 U.S. at 672 (emphasis added).

1 U.S.C. § 106 codified this well-recognized substantive and implicit constitutional requirement. Reading 1 U.S.C. §§ 101 and 106 together compels the conclusion that all acts respecting a bill toward enactment must occur **at least through presentment to the President** while Congress is in session.

It is well established that a *sine die* "adjournment terminates the legislative existence of Congress." <u>The Pocket Veto Case</u>, 279 U.S. at 681. "'Th[e] expression, a 'house,' or 'each house,' [when] employed... with reference to the faculties and powers of the two chambers ... always means ... the constitutional quorum, assembled for the transaction of business, and capable of transacting business.'" 279 U.S. at 683 (quoting I Curtis' Constitutional History of the United States 486, n. 1). Moreover, the term "'House'" means "the House in session," 279 U.S. at 682, and "'as organized and entitled to exert legislative power,' that is, the legislative bodies 'organized conformably

28

to law for the purpose of enacting legislation.'" Id. (*quoting* Missouri Pacific Railway, 248 U.S. at 281). [T]hus, the "attestation" by the presiding officers and the "**declaration by the two houses** ... to the President," Marshall Field, 143 U.S. at 672, could not have been an "attestation" or "declaration" by any such "house" or "houses" during adjournment *sine die* because no such "houses" exist constitutionally at such time. *See also*, United States National Bank of Oregon v. Independent Insurance Agents of America, 508 U.S. 439, 455, n.7 (1993)(noting that the rule established in Marshall Field, 143 U.S. at 672, made statutory by 1 U.S.C. § 106, turned upon "the enrolled bill signed in **open session** by the Speaker of the House of Representatives and the President of the Senate" (emphasis added)).

When a bill has passed the House of Representatives, it must be printed as an "engrossed bill", which "shall be signed by the Clerk of the House ... sent to the other House, and *in that form* shall be dealt with by that House and its officers, and, if passed, returned signed by said Clerk." 1 U.S.C. § 106 (emphasis added).

In the immediate case, H.R. 3190 was passed by the House of Representatives on May 12, 1947, engrossed, and sent to the Senate, and there referred to the Senate Committee on the Judiciary. *See* 93 CONG. REC. 5048-49, 5121, supra **(App. C)**. However, it was not dealt with "in that form" and did not pass "in that form."

Instead, amendments were proposed under cover of Sen. Rep. No. 1620, were "agreed to en block," **read** into the record a single time, and "ordered to be engrossed," 94 CONG. REC. 8721-22, supra **(App. J)**. Then, "the bill [H.R. 3190] was **read** the third time and passed." 94 CONG. REC. 8722, supra **(App. J)**.

This contravenes the procedures of the House of Representatives for the 80th Congress. "When a bill with Senate amendments comes before the House, the House takes up each amendment by itself ..." H.Doc. No. 769, <u>STAGES OF A BILL IN THE HOUSE, § 983, No. 13, pg. 483.</u>

Moreover, to be expected, "[t]he House in which a bill originates enrolls it." Id. No. 15. However, in the case of House bills, such as H.R. 3190, the "chairman of the Committee on House Administration ... affixes to the bills examined a certificate that the bill has been found truly enrolled." Id. No. 16. **No such certificate is "affixe[d]" to H.R. 3190 as certified by the officials of the National Archives.** National Archives & Records Adm. Cert. H.R. 3190, supra **(App. P)**.

Thus, it appears on the face of the purportedly amended H.R. 3190, that it was not "enrolled," there is no record in the House of Representatives prior to June 20, 1948 -- the day Congress adjourned **sine die** -- that it had been or was to be "enrolled" and, therefore, in addition to the fact that the bill did not follow the course of law as prescribed, it lacks both of the elements underlying the <u>Marshall Field</u> evidentiary rule – i.e., the "signing" must be "in open session" and must be upon "an enrolled bill." <u>Marshall Field</u>, 143 U.S. at 672.[17]

The reference to the H.R. 3190 purportedly "found truly enrolled" is identified thus: "H.R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled 'Crimes and Criminal Procedure.'" 94 CONG. REC. 9363

---

[17] On July 26, 1948, "Mr. LaComte, from the Committee on House Administration, reported that that committee had examined and found" that 3190 had been "truly enrolled." 94 CONG. REC. 9363, supra, **(App. U). This alleged finding appears over a month after the June 20, 1948 adjournment** *sine die* **and over a month since the Speaker of the House, President pro tempore of the Senate, and President Truman allegedly signed H.R. 3190 and it was deposited in the State Department as an enactment.** The statutory mandate after final passage and printing to "call[]" the bill in such final form "the enrolled bill," 1 U.S.C. § 106, July 30, 1947, ch. 388, § 1, 61 Stat. 634, is determined by the certificate "affixe[d] to the bill," <u>H.Doc. No. 769,</u> STAGES OF A BILL, supra, No. 16, all of which is required before the "sign[ing] by the presiding officers of both Houses and sent to the President of the United States." 1 U.S.C. § 106.

**(App. U).  It does not indicate whether it is referring to H.R. 3190 as passed by the House on May 12, 1947 – the only time the House ever voted on it,** 93 CONG. REC. 5048-49, supra **(App. C);** See also 94 CONG. REC. D556-57 (DAILY DIGEST) (showing passage in the House of H.R. 3190 the only time on May 12, 1947), supra, **(App. B), or the dubiously amended H.R. 3190 passed by the Senate on June 18, 1948.**  94 CONG. REC. 8721-22, supra, **(App. J).**[18]

Art. I, § 7, mandates that a bill that has passed both Houses "shall before it becomes a Law, be presented to the President of the United States." Art. I, § 7, Cl. 2; Chadha, 462 U.S. at 945.  However, the constitutional requirement to "present" such a bill to the President "can only contemplate a presentment by the Congress in some manner, [because] … [a]t that point the bill is necessarily in the hands of the Congress." United States v. Kapsalis, 214 F.2d 677, 680 (7th Cir. 1954), cert. denied, 349 U.S. 906 (1955).  Thus, presentment is clearly part of the legislative procedure required as essential to enactment of a bill as law. Chadha, 462 U.S. at 945, 947, 951.  **"After a bill has been presented to the President, no further action is required by Congress in respect of that bill, unless it be disapproved by him …"** La Abra Silver Mining Co. v. United States, 175 U.S. 423, 454 (1899).  Clearly, presentment is part of the constitutionally mandated "Business," Art. I, § 5, Cl. 1, to be "exercised in accord with [the] single, finely wrought and exhaustively considered procedures" "prescri[bed] … in Art. I, §§ 1, 7." Chadha, 462 U.S. at 951.

---

[18] As noted previously, the June 18, 1948 passage by the Senate of H.R. 3190 appears to have been the same H.R. 3190 passed by the House on May 12, 1947.  However, even if the Senate's passage involved an amended version (which the record does not show) of H.R. 3190, the absence of the required certificate of enrollment affixed to the bill and the purported finding of enrollment long after the bill had been purportedly signed and sent to the Department of State as an enactment into positive law smacks of post-factum cover-up of a mistake of constitutional proportion, if not evidence of a conspiracy.

"'Congress,'" of course, "'cannot grant to an officer under its control what it does not possess,'" Metropolitan Wash. Airports, 501 U.S. at 275 (*quoting* Bowsher, 478 U.S. at 726. Congress does not possess the "'capab[ility] of transacting business'" and is not "'entitled to exert legislative power,'" when its "legislative existence" has been "terminate[d]" by an "adjournment" *sine die*. The Pocket Veto Case, 279 U.S. at 681-83.

**Congress, therefore, could not "present" to the President a Bill signed after an adjournment *sine die* which terminated the existence of the legislative session.** "The signing by [the presiding officers of the two houses], in open session, of an enrolled bill is **an attestation by the two houses**." Marshall Field, 143 U.S. at 672. Such a signing while Congress is under legislative termination by adjournment **cannot** constitute "an attestation by the two houses." The Pocket Veto Case, 279 U.S. at 683 ("[H]ouse ... with reference to the faculties and powers of the two chambers ... always means ... the constitutional quorum, assembled for the transaction of business, and capable of transacting business."); Wright, 302 U.S. at 600 (Stone, J., concurring)("The houses of Congress, being collective bodies, transacting their routine business by majority action are capable of acting **only** when in session and by formal action recorded in their respective journals, or by recognition, through such action, of an established practice.").

Whether the action taken under H.Con. Res. 219 was an "exercise of legislative power" depends upon whether it was essentially "legislative in purpose and effect." Chadha, 462 U.S. at 952. "In short, when Congress '[takes] action that ha[s] the purpose and effect of altering the legal rights, duties, and relations of persons ... outside the Legislative Branch,' it must take that action by the procedures authorized in the Constitution." Metropolitan Wash. Airports, 501 U.S. at 276 (quoting Chadha, 462 U.S.

at 952-55). "If Congress chooses to use a [] resolution … as a means of expediting action, it may do so, if it acts by both houses and presents the resolution to the President," Consumer Energy Council of America v. F.E.R.C., 673 F.2d 425, 445 (D.C. Cir. 1982), aff'd, Process Gas Consumers Group v. Consumer Energy Council of America, 463 U.S. 1216 (1983).

**The inescapable conclusion as to the "purpose and effect" of H. Con. Res. 219 was to enact a bill that at the time of adjournment on June 20, 1948, had not been enrolled and did not textually exist.** The Senate brought the long-dead H.R. 3190 into consideration for the first time in the Second Session of the 80th Congress with "a large volume of amendments" under Sen. Rep. 1620, at which time the "amendments were considered and agreed to en bloc" and "ordered to be engrossed." 94 CONG. REC. 8721-22, supra **(App. J).** H.R. 3190 was thereupon read for the "third time" and "passed" by the Senate. (Id.) The House immediately thereafter "concurred in" the amendments, but **never voted on the text of H.R. 3190** then or at any time during that session. 94 CONG. REC. 8864-65. *See also* 94 CONG. REC. D556-57 (DAILY DIGEST) (showing passage in the House of H.R. 3190 the only time on May 12, 1947), supra **(App. B).**

The bill, purportedly H.R. 3190, signed by the legislative officers on June 23, 1948, presented thereafter to the President and signed by him on June 25, 1948, **is a text that did not exist prior to the adjournment.** Instead, this version of H.R. 3190 – never considered or voted on by the House and **doubtfully by the Senate – contains the texts of the amendments for the first and only time.** Here, the 80th Congress, denounced by President Truman, as a "body dominated by men with 'a dangerous lust for power and

privilege,'" 27 ENCYCLOPEDIA AMERICANA 175 (2005), surreptitiously provided a bill the text of which had never passed either House "'mask[ed] under ... [the] indirect measure,'" Metropolitan Wash. Airports, supra, 501 U.S. at 277 (quoting Madison, THE FEDERALIST, No. 48, pg. 334 (J. Cooke 1961 ed.)) of a resolution purporting to authorize continuing legislative action during adjournment, with no quorum and no Congress, of an extra-congressional bill. Public Law 80-772 did not "become a Law" as required by the constitutional procedures mandated under Art. I, § 5, Cl. 1 and Art. I, § 7, Cl. 2 and is unconstitutional and *void ab initio*.

## THE ACTIONS OF THE DISTRICT COURT VIOLATE 18 USC § 4001(A)

The District Court's actions, which are continuing in nature, are in direct violation of **18 USC § 4001(a),** which declares: **"No citizen shall be imprisoned or otherwise detained by the United States, except pursuant to an Act of Congress."**

Through this Motion to Dismiss Indictment it has been established that from the initial stages of the Government's prosecution of Defendant and continuing through the current confinement, an overwhelming amount of the Government's actions to prosecute Defendant have been executed in accordance with invalid, void and unconstitutional procedures and laws. Initially, the prosecutors failed to properly establish jurisdiction within their Indictment, then, the District Court only *assumed* jurisdiction was proper as to the subject matter and Defendant, without making the necessary legal finding. Thereafter, the District Court entered an order confining Defendant to Executive Custody pursuant to 18 USC § 3142(e) under a statute, namely Title 18 U.S.C. § 3231, that is not

valid law and unconstitutional on its face. Thus, Defendant's confinement is not only illegal, but represents ongoing constitutional violations.

It should be noted that whether the Government undertook these actions with the full knowledge of their invalid nature does not concern Defendant at the present time. However, the granting of any and all relief available to correct these actions is of immediate concern. Defendant is currently confined to Executive Custody pursuant to not one single "Act of Congress." Therefore, the most immediate legal remedy to restore Defendant's constitutional rights, would be to release Defendant from Executive Custody and dismiss the indictment as is required by 18 U.S.C. § 4001(a). There is no procedural rule or Act of Congress that could possibly exist to allow a *continuing violation* of Defendant's rights by ordering her continued confinement in Executive Custody. As such, the actions previously taken by the District Court are in violation of Due Process and the Court should issue an order *voiding* the indictment and its previous orders.

## CONCLUSION AND PRAYER FOR RELIEF

Title 18 of the Criminal Code and 18 USC § 3231 are *null and void*, ab initio because the statute that was signed into law by the Speaker of the House, President pro tempore, and President of the United States, is *textually different* than the bill "passed" by the 80th Congress which is in violation of Article I, Section 7 of the Constitution of the United States. The United States Attorney and the District Court's failure to establish and/or make a legal finding with regards to the required jurisdiction and authority necessary to prosecute Defendant violated Due Process, rendering the indictment and orders of the court *void*.

The failure of Defendant's counsel to properly research the issues of jurisdiction

35

raised in this Motion, which affect all aspects of the proceedings, including indictment and continuing through trial and sentencing, was a violation of Defendant's constitutional rights.

Since Defendant is still in Executive Custody pursuant to the ***ultra vires*** actions of the District Court, specifically the **District Court's Indictment and Confinement Orders,** there is a continuing violation of Defendant's Due Process rights, and the Court should effectively render the indictment ***void***.

The District Court should remedy these past actions by issuing an order to dismiss the indictment, and further adopt the findings of fact and law established in this Motion. Finally, this Court should Order Defendant released from Executive Custody by declaring his Indictment ***void***.

Respectfully submitted on this ____ day of June , 2007.


I certify under the penalty of perjury that the foregoing is true and correct pursuant to 28 USC § 1746.


Gayland Sanders
301 Maxwell Road
Peoria, IL 61604

## CERTIFICATE OF SERVICE

On this the ____ day of June ____, 2007, Movant served a true and correct copy of this motion on counsel of record, Bradley W. Murphy, US Attorney, One Technology Plaza, Suite 400, 211 Fulton Street, Peoria, IL 61602 (309) 671-7050.

Gayland G. Sanders