IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06-10060 |
| | ) |
| GAYLAND SANDERS, | ) |
| | ) |
| Defendant. | ) |

**RESPONSE TO MOTION TO DISMISS
INDICTMENT FOR LACK OF DISTRICT COURT'S JURISDICTION**

**I. The District Court Has Subject Matter Jurisdiction Over Sanders' Case**

Sanders contends that the statutes used to indict and convict him were never validly enacted and that the district court therefore lacked subject matter jurisdiction over his criminal case. Specifically, he maintains that 18 U.S.C. § 3231 (which provides original jurisdiction to district courts to hear cases involving criminal violations of federal law) is unconstitutional because Public Law 80-772, the provision that enacted 18 U.S.C. § 3231, was never enacted into positive law and was therefore null and void *ab initio*. Put another way, Sanders contends that his prosecution is precluded because no federal court, including the Central District of Illinois, has subject matter jurisdiction over federal cases.

Every court to have considered this argument has rejected it, as the statutes were validly enacted, the Supreme Court and courts of appeals have consistently applied the statutes as a foundation of jurisdiction, and the defendant cites to no legitimate contrary

authority.

   A. Analysis

Public Law 80-772 is the provision that enacted 18 U.S.C. § 3231, which reads:

> The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.
>
> Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

18 U.S.C. § 3231.

Sanders's argument is as follows: each Congress is generally composed of two sessions, and Congress adjourns between sessions. In the first session of the 80th Congress in July of 1947, the House of Representatives passed its version of Public Law 80-772. According to Sanders, the House then adjourned twice, *sine die*,[1] which killed the bill and rendered it null. Notwithstanding this, after Congress reconvened in January 1948 for its second session, the bill surfaced in the Senate. The Senate amended the bill and then passed its version, and the House voted on the amendments but not on the amended bill. Because the House's version of the bill had essentially died, says Sanders, the bill was effectively passed only by the Senate. As a result, Sanders contends, Public Law 80-772 was never passed into law. Congress then adjourned *sine die* on June 20, 1948, preventing any return of the bill to Congress, and it was signed into law after

---

[1] Adjournment "*sine die*," Latin for "without a day being fixed," means the final adjournment for a session with no date set for resumption. *See R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1064 n.2 (9th Cir. 1997); Black's Law Dictionary 42 (7th ed.1999); A Dictionary of Modern Legal Usage 810 (2d ed. 1995).

Congress adjourned, which Sanders says was unlawful.

This argument rests on the premise that when a house of Congress passes a bill during its first session and then adjourns, the bill is as ineffective as if it had never existed. In support of this premise, Sanders relies on several authorities that lend ambiguous support at best and are nevertheless not binding on this Court. For example, he cites a 1949 treatise by Floyd Riddick, entitled The United States Congress: Organization and Procedure. This treatise fails to address the issue presented by Sanders. Instead, Riddick, *supra* 59, states that proposed but un-enacted legislation dies when a Congress adjourns its *last* session *sine die*, but Riddick does not address whether Congress can adjourn an *earlier* session *sine die* without defeating pending legislation.

Sanders also relies heavily on two footnotes in the appendix to the opinion of *Kennedy v. Sampson*, 511 F.2d 430 (D.C. Cir. 1974), a case involving a challenge to the "pocket veto" power of the President. The two footnotes discuss Congress's adjournment in July 1947, after the House passage of Public Law 80-772, but before the Senate passage of this bill.
The text of one of those footnotes describes the adjournment as follows:

> The Senate and the House of Representatives adjourned on
> July 27, 1947, under a "conditional final adjournment" resolution,
> S.Cong.Res. 33; 93 Cong.Rec. 10400. Pursuant to that resolution,
> the two Houses were to stand in adjournment until January 2, 1948,
> unless recalled into a session earlier by specified Senate and House
> leaders. In effect, the adjournment was a sine die adjournment,
> not an intrasession adjournment.

511 F.2d 430, Appx. at 4.

While at first blush the footnote appears to lend some support to Sanders's

argument, when the footnote is read in context, it is clear that the July 1947 recess was not an intrasession recess, but an intersession recess. That is, although the term "*sine die*" is used in the footnotes, it was intended to convey that an entire session of Congress was ending, rather than merely taking a break in the session. It should not be read as Sanders reads it, to mean that the entirety of the Congress ended at that time. Instead, only one session did. The surrounding text demonstrates this, too, because it indicates that footnotes 4 and 5 refer to the first and second sessions of the 80th Congress, respectively. Thus, taken in context, the footnotes cannot be read literally to mean that there was an adjournment *sine die* of that Congress, such that all pending bills died.

Moreover, the 1947 adjournment was not *sine die.* When the first session adjourned, it did so to a date certain, not *sine die.* An adjournment *sine die* means the ending of a session without setting a date certain to reconvene. *See* A Dictionary of Modern Legal Usage 810 (2d ed. 1995). The July 1947 session of Congress was adjourned until January 2, 1948, which is a date certain; thus, the adjournment was not *sine die*. *See Kennedy*, 511 F.2d 430, Appx. at n.4 (Congress adjourned in July 1947 until January 2, 1948). Consequently, the adjournment after the House passage did not kill the bill, and Sanders's contention to the contrary is without merit.

Sanders's other citations likewise miss the mark. *See, e.g.*, *The Pocket Veto Case*, 279 U.S. 655, 681 (1929) (discussing whether a bill approved by both houses during Congress' first session can be returned by the President during the intersession recess, not whether a bill passed by one house during the first session becomes null during the

recess); 20 Op.Off.Legal Counsel 372 (1996) (relying on a prior OLC opinion, itself relying on the Riddick treatise, *supra*, to determine that *sine die* adjournment terminates the power of Congressional subpoenas after a session closes, but not addressing what happens to bills between sessions).

The authorities Sanders cites to do not demonstrate any material flaw in the jurisdictional statute, and other factors militate against his argument. First, while Congress is bound to follow the Constitution's requirements for passing legislation, there is no constitutional requirement that bills passed by one chamber of Congress before an intersession adjournment of the same Congress be voided, and Sanders fails to identify any such constitutional requirement. Also, while not explicitly describing the situation at issue, the rules of Congress, both currently and in the 80th Congress, suggest that legislative business generally continues between sessions of the same Congress as though no adjournment had taken place. *See* Senate Rule XXXII, S.Doc. No. 80-11, at 44 (1947), and House of Representatives Rule XXVI, H.R. Doc. 79-769, at 433 (1947) (referring to unfinished business in notes accompanying the rule).[2]

Several district courts have reached the same result. In *United States v. Risquet* 426 F. Supp.2d 310 (E.D. Pa. 2006), the defendant (like Sanders) argued that his conviction was invalid because the statute relied upon for district court subject-matter jurisdiction never passed both houses of Congress in 1948, and was therefore void. Risquet argued

---

[2] For the current rules, *see* Standing Rules of the Senate Rule XVII (available at: http://rules.senate.gov/senaterules/rule18.php) and U.S. House of Representatives Committee on Rules, Rule XI(6) (available at: http://www.rules.house.gov/archives/1 1RXI.htm).

(again, like Sanders) that, because of a defect in the 1948 passage of Public Law 80-772, Section 3231 and all subsequently enacted statutes that rely upon § 3231 for district court jurisdiction are invalid. *Id.* at 311. The Eastern District of Pennsylvania flatly rejected this argument. It observed that the 1948 amendment to Section 3231 passed both house of Congress and was signed into law by President Truman on June 25, 1948, and held that the amendment and statute were therefore "properly enacted and binding." *Id.* (citing a number of unpublished district court cases in which the courts retained jurisdiction despite an identical challenge to its validity). *See also Chao v. USA Mining Inc.*, 2007 WL 208530, *16 (E.D. Tenn. Jan. 24, 2007) (observing that "every court that has considered this argument has ruled against the defendant," and citing *Risquet* along with several unpublished cases); *United States v. Boggs*, 2007 WL 433076 (E.D. Ky. Feb. 2, 2007) (stating that "the numerous courts that have addressed this issue . . . have unanimously rejected Defendant's argument," and citing *Risquet* and several unpublished cases); *United States v. Hoskins*, 2006 WL 1044269 (E.D. Ky. Apr. 19, 2006) (rejecting argument that § 3231 was never properly enacted into law and noting that "other district courts have rejected similar jurisdictional challenges by criminal defendants").

The court in *Risquet* also reasoned that the Supreme Court's consistent discussion and application of 18 U.S.C. § 3231 as a foundation of jurisdiction refuted the defendant's assertions. 426 F. Supp.2d at 311 (citing *Tafflin v. Levitt*, 493 U.S. 455, 471 (1990); *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 213, n.15 (1987); *Pennsylvania v. Nelson*, 350 U.S. 497, 502, n.10 (1956)). *See also Chao,* 2007 WL 208530, *16

(holding that defendant's argument that his conviction was invalid because Title 18 was not properly enacted was without merit because "the Supreme Court's numerous discussion and citations to the questioned laws lends support to the proposition that they were properly enacted").

Likewise, the Court of Appeals for the Seventh Circuit has consistently relied upon § 3231 as providing the district court with subject-matter jurisdiction over drug distribution charges such as Sanders'. *See, e.g., United States v. Vega,* 438 F.3d 801, 803 (7th Cir. 2006) ("All federal district courts have jurisdiction over federal crimes, thanks to 18 U.S.C. § 3231"); *United States v. Burke*, 425 F.3d 400, 408 (7th Cir. 2005) ("Subject-matter jurisdiction is furnished by 18 U.S.C. § 3231, which covers all criminal prosecutions under the United States Code"); *United States v. Turcotte*, 405 F.3d 515, 521 (7th Cir. 2005) ("Since [the defendant] was charged with a violation of the federal Controlled Substances Act (21 U.S.C. §§ 841(a)(1) and 846) the district court had jurisdiction pursuant to 18 U.S.C. § 3231, which provides for district court jurisdiction over "all offenses against the laws of the United States").

Finally, even if 18 U.S.C. § 3231 were somehow flawed, the district court would have retained jurisdiction over this case because the predecessor statute to § 3231, to which Sanders offers no challenge, provides for such jurisdiction as well. *See Risquet*, 426 F. Supp.2d at 312. In short, the laws challenged by Sanders were properly enacted and his contentions to the contrary are without merit.

**B. Conclusion**

The defendant's Motion to Dismiss Indictment should be denied.

        Respectfully submitted,

        UNITED STATES OF AMERICA

        RODGER A. HEATON
        UNITED STATES ATTORNEY

        **s/: BRADLEY W. MURPHY**
        BRADLEY W. MURPHY
        Assistant United States Attorney
        One Technology Plaza
        211 Fulton Street, 4th Floor
        Peoria, Illinois 61602
        Telephone: 309.671.7050

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. A copy of the foregoing has been mailed by U.S. Mail to:

> Gayland Sanders
> 301 Maxwell Road
> Peoria, IL 61604

> **s/: Kim Ritthaler**
> Kim Ritthaler
> Legal Assistant
> Office of the United States Attorney
> One Technology Plaza
> 211 Fulton Street, 4th Floor
> Peoria, Illinois 61602
> Telephone: 309.671.7050